OPINION
{¶ 1} Defendant-Appellant Christina Moore ("Moore") appeals from the October 25, 2006 Judgment Entry of Sentencing of the Court of Common Pleas, Juvenile Division, of Putnam County, Ohio sentencing her to 90 days in jail, suspended, and a one hundred dollar fine for her conviction of Contributing to the Unruliness of a Minor, a misdemeanor of the first degree, in violation of Ohio Revised Code Section2919.24(A)(1).
 {¶ 2} This matter stems from events occurring January 5, 2006, into the early morning hours of January 6, 2006. On this date, Lindsay Davis, then 14, was scheduled to baby-sit for Moore. The babysitting arrangement had been made during an online conversation between Lindsay and Moore. Lindsay then obtained permission from her parents to be out of the house after curfew to baby-sit. Lindsay was scheduled to baby-sit from approximately 5:30 p.m. to 11:30 p.m. Prior to the evening of January 5, 2006, Moore notified Lindsay, while speaking to her over the computer that she would not be needed to baby-sit. Lindsay replied to Moore, over the computer, that she would come over anyway, if it was alright with Moore, and let her parents think that she was babysitting, as an excuse to get out of the house. Lindsay planned to be dropped off at Moore's and then go to the house of Brittany Moore, Lindsay's friend and Christina Moore's sister-in-law. *Page 3 
 {¶ 3} After Lindsay arrived at Moore's home, Moore subsequently dropped Lindsay off at a laundry mat within walking distance of Brittany's house, and Lindsay walked to Brittany's. Lindsay stayed at Brittany's house for approximately an hour and a half before Brittany's mother took Lindsay and Brittany back to Moore's house. At this point, Moore had returned from bowling and two teenaged boys, Brandon Paxton and Tyler Hacker were also at the house. The girls return to Moore's house was so that Brittany and her mother could confront the two boys about some statements the boys made at school concerning Brittany. Brandon Paxton was Lindsay's boyfriend at the time. After the confrontation, Brittany and her mother left Moore's home, leaving Brandon, Tyler, and Lindsay at the house, along with Moore and her husband and children.
 {¶ 4} After Lindsay spent some time at Moore's house, Moore was prepared to let Brandon take Lindsay home until her husband, Kevin Moore, objected that either he or Moore should take Lindsay home. Moore subsequently took Lindsay to Bob's Carry-Out, where Moore left Lindsay in the care of Brandon Paxton.
 {¶ 5} Brandon and Lindsay subsequently went to the home of Tyler Hacker. From Tyler's house, at approximately 11:00 — 11:30 p.m., Lindsay called her parents and told them that Moore would be home later than planned, but that Moore would still bring Lindsay home around 1 a.m. After hanging up with Lindsay, her parents decided it *Page 4 
would be safest if one of them picked her up, in case Moore had been drinking, so they attempted to reach Lindsay at Moore's home.
 {¶ 6} Upon calling Moore's house, Lindsay's mother, Dawn Nelson was told by Moore that Moore had dropped Lindsay off at the Nelson house earlier in the evening, around approximately 11:00-11:30 p.m. Dawn then contacted the Putnam County Sheriffs Office, while Lindsay's step-father, Brad Nelson, went out looking for her. Dawn also contacted Brandon's mother to see if Brandon and Lindsay were at the house. Brandon's mother subsequently telephoned Brandon to let him know that Lindsay's parents were looking for her. After this call, Brandon took Lindsay home around 12:30-1:00 a.m. Dawn Nelson then called Moore to let her know that Lindsay had been found.
 {¶ 7} Moore was eventually interviewed by Deputy Terry Dockery, Jr. of the Putnam County Sheriff's Office. Initially, Moore stated that she had taken Lindsay home, after Kevin Moore objected to letting Brandon take her home. Once the Deputy questioned her further, however, Moore related that she took Lindsay to Bob's Carry Out and left her in the care of Brandon Paxton. Moore's explanation for the variance in her story was her concern that Kevin would be angry if he found that she did not personally take Lindsay home.
 {¶ 8} On July 5, 2006 Moore was charged by complaint in Putnam County Juvenile Court with one count of Contributing to the Unruliness of a Child, a *Page 5 
misdemeanor of the first degree, in violation of Ohio Revised Code Section 2919.24(A)(1).[1] On July 26, 2006 Moore pled not guilty to the charge in the complaint.
 {¶ 9} The matter proceeded to jury trial in the Juvenile Court commencing on October 3, 2006. At trial, the jury heard the testimony of Brad and Dawn Nelson, Lindsay Davis, Terry Dockery, Jr., Brad Paxton, Megan Guelde, Cory Elston, Brittany Moore and Kevin Moore. Testimony of the Defendant, Christina Moore, was also introduced via written transcript from the prior trial in Putnam County Court. Moore's prior testimony was introduced during the testimony of Terry Dockery, the investigating officer. The jury returned a verdict finding Moore guilty of the charge.
 {¶ 10} On October 25, 2006 the trial court conducted Moore's sentencing hearing. The trial court sentenced Moore to 90 days in jail, suspended upon the condition that Moore comply with the terms and conditions of her probation, a one hundred dollar fine, and one year of probation with the Putnam County Court Probation Department, for her conviction of Contributing to the Unruliness of a Minor, a misdemeanor of the first degree, in violation of Ohio Revised Code Section2919.24(A)(1).
 {¶ 11} Moore now appeals, asserting four assignments of error.
 ASSIGNMENT OF ERROR I THE COURT ERRED IN OVERRULING APPELLANT'S RULE 29 MOTION FOR ACQUITTAL *Page 6 
 ASSIGNMENT OF ERROR II THE JURY'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE
 ASSIGNMENT OF ERROR III THE PROSECUTING ATTORNEY MISSTATED THE LAW THROUGHOUT THE TRIAL AND DURING CLOSING ARGUMENTS
 ASSIGNMENT OF ERROR IV THE COURT ERRED BY INSTRUCTING THE JURY ON "FAILURE TO ACT"
 {¶ 12} In her first assignment of error, Moore contends that the trial court improperly overruled her Criminal R. 29 motion for acquittal because the State failed to prove that Lindsay was an unruly child.
 {¶ 13} Crim.R. 29(A) provides:
 The court on motion of a defendant or on it's own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.
 {¶ 14} A trial court should not grant a Crim.R. 29 motion for acquittal if "reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt * * *." State v. Bridgeman (1978), 55 Ohio St.2d 261,263, 381 N.E.2d 184. However, this Court has previously held that theBridgeman standard "must be viewed in light of the sufficiency of evidence test put forth in State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus." State v. Foster (Sept. 17, 1997), 3rd Dist. No. 13-97-09. Thus, "[t]he relevant *Page 7 
inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."Jenks, 61 Ohio St.3d at paragraph two of the syllabus.
 {¶ 15} Moore was charged with Contributing to the Unruliness of a Child in violation of R.C. 2919.24 which provides in relevant part:
 (A) No person, including a parent, guardian, or other custodian of a child, shall do any of the following:
 (1) Aid, abet, induce, cause, encourage, or contribute to a child or a ward of the juvenile court becoming an unruly child, as defined in section 2151.022 of the Revised Code, or a delinquent child, as defined in section 2152.02 of the Revised Code;
 (2) Act in a way tending to cause a child or a ward of the juvenile court to become an unruly child, as defined in section 2151.022 of the Revised Code, or a delinquent child, as defined in section 2152.02 of the Revised Code * * *
Ohio Revised Code Section 2151.02 defines an unruly child as follows:
 (A) Any child who does not submit to the reasonable control of the child's parents, teachers, guardian, or custodian, by reason of being wayward or habitually disobedient;
 (B) Any child who is an habitual truant from school and who previously has not been adjudicated an unruly child for being an habitual truant;
 (C) Any child who behaves in a manner as to injure or endanger the child's own health or morals or the health or morals of others;
 (D) Any child who violates a law * * * that is applicable only to a child. *Page 8 
 {¶ 16} Our review of the record finds sufficient evidence to support the finding that Lindsay was an unruly child. Both of Lindsay's parents testified that Lindsay was always under a curfew. Typically, Lindsay was required to be home by 9:00 — 10:00 p.m. According to her step-father, Brad Nelson, Lindsay would not normally be allowed out after curfew without a good reason such as a babysitting arrangement.
 {¶ 17} In the present case, Lindsay broke her curfew by lying to her parents about why she was going to Moore's house. Under normal circumstances, Lindsay would not have been allowed out of the house as late in the evening as she was on January 5, 2006. Lindsay was aware, according to Moore, that she would not be needed to baby-sit that evening before she left her house. As her step-father drove her to Moore's house, Lindsay made no mention of the cancelled babysitting arrangement or her alternate plans for the evening. Instead, she actively perpetrated the lie that she was going to Moore's house to baby-sit.
 {¶ 18} At no point in the evening did Lindsay make any attempts to notify her parents as to her whereabouts. After Moore left Lindsay in the care of Brandon Paxton, Lindsay again affirmatively lied to her parents about her whereabouts. From Tyler Packer's house Lindsay called her parents and told them that she would be out even later than originally planned, claiming that Moore had called and stated that she would be home between 1:00 — 1:30 a.m.
 {¶ 19} It is also important to note that Lindsay, at 14 years of age, was not allowed to date, pursuant to her parents' rules. The actions of Lindsay and Moore also served to *Page 9 
circumvent that parental rule when Lindsay was dropped off at Bob's Carry Out with Brandon Paxton. Finally, in her prior testimony introduced at trial, Moore was asked about whether she indicated in her signed statement that she believed Lindsay to be unruly. Moore admitted that she believed Lindsay to be unruly even before this incident.
 {¶ 20} We conclude that this is sufficient evidence to find that Lindsay was an unruly child. Accordingly, we find that the trial court did not err in overruling Moore's Crim. R. 29 motion for acquittal. Therefore, Moore's first assignment of error is overruled.
 {¶ 21} In Moore's second assignment of error, she argues that the jury's verdict was against the manifest weight of the evidence. When reviewing whether a verdict is against the manifest weight of the evidence, the appellate court must review the entire record, consider the credibility of witnesses, and determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 1997-Ohio-52. Here, we determine that the verdict was supported by the manifest weight of the evidence.
 {¶ 22} As discussed in the previous assignment of error, Lindsay was an unruly child, who lied to her parents, and broke curfew. Moore's actions aided Lindsay in breaking her parents' rules. When Moore notified Lindsay that she would not be needed to baby-sit, Lindsay responded "if it was alright with you, I will just go ahead and let my *Page 10 
mom and them know that I am just going to baby-sit. I'm just going to come to your house and then have them drop me off at your house, and then I'm going to go to Brittany's for a while. That way, I can get the hell out of this home." (Tr. p. 95). Moore never notified Lindsay's parents when the babysitting arrangement changed, even though she knew that Lindsay intended to allow her parents to believe she was babysitting in order to leave the house.
 {¶ 23} Moore also did not notify Lindsay's parents when she dropped Lindsay off at a laundry mat to walk to Brittany's house, instead of Lindsay staying at Moore's house, where Lindsay's parents would be able to reach her. Moreover, once Lindsay's parents realized that she was not at Moore's house, as Lindsay had represented, Moore affirmatively lied to them, stating that she had dropped Lindsay off at their house earlier in the evening and that Lindsay had entered the garage, when she had actually dropped Lindsay off with Brandon Paxton, although Lindsay was not allowed to date. Lindsay testified at trial that:
 A: [Moore] was supposed to take me home.
 Q: Okay. And did she do that?
 A: She dropped me off to Brandon at Bob's Carry Out.
 Q: How did the arrangement for that to occur, was there a discussion about it?
 A: Brandon went to Bob's, and we followed him there, and then she dropped me off to him, and he was supposed to take me home.
 * * *
 Q: Then how did you know he was going to be taking you home?
 A: Because they told me
 Q: Who told you?
 A: [Moore] did. *Page 11 
(Tr. p. 55-56).
 {¶ 24} After Dawn Nelson informed Moore that Lindsay was missing, concerned about her whereabouts, Moore still maintained her lie that she had dropped Lindsay off at her home. Accordingly, we find that the jury verdict was supported by the manifest weight of the evidence; Moore aided Lindsay in an entire pattern of conduct disobeying her parents. Therefore, Moore's second assignment of error is overruled.
 {¶ 25} For ease of discussion, Moore's third and fourth assignments of error will be discussed together. In her third assignment of error, Moore claims prejudice stemming from remarks made by the prosecutor concerning Moore's failure to act and to act responsibly. In her fourth assignment of error, Moore claims that the inclusion of "failure to act" language as part of the jury instruction misrepresented the law to the jury.
 {¶ 26} In general, the rule regarding appellate review of jury instructions is that a sole instruction must be viewed within context of the whole set rather than in isolation. State v. Coe, 3rd Dist. No. 13-97-46, 1998 WL 306555 citing State v. Taylor (1997),78 Ohio St.3d 15, 29-30, 676 N.E.2d 82; State v. Price (1979), 60 Ohio St.2d 136,398 N.E.2d 772, paragraph four of the syllabus. Here, the trial court properly instructed the jury on causation pursuant to the Ohio Jury Instructions:
 The defendant's responsibility is not limited to the immediate or most obvious result of the defendant's act or failure to act. The defendant is also responsible for the natural and foreseeable consequences that follow, in the ordinary course of events, from the act or failure to act. *Page 12 
4 OJI 409.55(2). (Tr. p. 179). Nothing in R.C. 2919.24 requires an overt act on the part of a defendant, where the child is in their control, as Lindsay was in Moore's on January 5, 2006. Moore was entrusted with Lindsay's care when she was dropped off to baby-sit. Where a duty exists, and a defendant makes no effort to comply with that duty, other courts have recognized the causation instruction contained in the Ohio Jury Instructions to be proper. In re Kent (Feb 5, 2001), 5th Dist. No. 2000 CA 0167 (where a child fails to attend school in a timely manner and the parent takes no action to cause attendance, the causation instruction including "failure to act" in the Ohio Jury Instructions is proper where the parent is charged under R.C. 2919.14). Here, Moore failed to notify Lindsay's parents when Lindsay was dropped off at her house with no babysitting job.
 {¶ 27} However, it is important to recognize that Moore contributed to Lindsay's unruliness through overt acts, as well as her failure to act. Moore allowed Lindsay to come to her home, knowing that Lindsay was lying to her parents about her reasons for being out of the house, and Moore admitted at trial that she knew in advance that Lindsay would be coming over even though there was no babysitting job for her. After Lindsay arrived, Moore then took Lindsay to the laundry mat to walk to Brittany's home, knowing Lindsay's parents would not expect her to be there. Next, after Lindsay returned to Moore's house, Moore dropped Lindsay off to her boyfriend, Brad Paxton, instead of taking Lindsay home, even though Lindsay had previously indicated to Moore that she was to be home around 11:00 p.m. — 11:30 p.m. from the babysitting job. Finally, Moore *Page 13 
lied to Lindsay's parents about taking Lindsay home earlier in the evening, when she was asked about Lindsay's whereabouts.
 {¶ 28} Moore also argues that the prosecutor made inappropriate comments concerning "an expectation that adults are to act responsibly," as well as statements during closing referring to Moore's passive conduct including her failure to notify Lindsay's parents that she would not be babysitting, and Moore's failure to take Lindsay home for the evening.
 {¶ 29} fourth assignments of error are overruled. The October 25, 2005 Judgment of the Court "The test for prosecutorial misconduct is whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. The touchstone of analysis is the fairness of the trial, not the culpability of the prosecutor." State v.Jones 90 Ohio St.3d 403, 420, 739 N.E.2d 300, 2000-Ohio-187 (internal citations omitted). Here, the prosecutor's statements were made during argument, and were not improper. However, any prejudice that would have resulted from these statements was cured by appropriate jury instructions which correctly stated the law, as well as the court's admonitions to the jury at the commencement of trial that the Court would instruct the jury as to the law to be applied to the facts. Therefore, Moore's third and fourth assignments of error are overruled. The October 25, 2005 Judgment of the Court of Common Pleas of Putnam County, Juvenile Division, is affirmed.
Judgment affirmed.
 ROGERS, P.J., and WILLAMOWSKI, J., concur. r
[1] Moore was first convicted of Contributing to the Unruliness of a Child in Putnam County Court in case number 2006 CRV 025, which proceeded to a jury trial on May 19, 2006. Prior to sentencing the judgment was vacated for lack of subject mater jurisdiction. *Page 1