OPINION *Page 2 
{¶ 1} Defendant-appellant, Christopher Sidders (hereinafter "Sidders"), appeals the Union County Court of Common Pleas judgment of conviction. For reasons that follow, we affirm.
 {¶ 2} On September 25, 2007, several car dealerships in Delaware, Marysville, and Richland, Ohio reported stolen vehicles. The circumstances of the incidents were relatively all the same: a medium build, white male, approximately 5'7" to 5'8" tall, in his late twenties or early thirties with brown hair and a thinner woman in her late thirties or early forties with dark hair would ask the dealer to test drive a vehicle. The woman would explain to the salesperson that she was inheriting a large sum of money, which she would be using to purchase the vehicle. The woman would drive away in the vehicle with the man, but the two would never return.
 {¶ 3} Law enforcement was able to locate all of the cars within Union and surrounding counties. Law enforcement was also able to identify the female suspect as Sandra Rawlins since several of the car dealerships had retained a photocopy of her driver's license before allowing her to test drive their vehicles. Upon further investigation and evidence gathered from the recovered stolen cars, law enforcement was able to identify the other suspect as Christopher Sidders. *Page 3 
 {¶ 4} On March 27, 2008, the Union County Grand Jury indicted Sidders on one (1) count of grand theft of a motor vehicle in violation of R.C. 2913.02(A)(2), (B)(5), a fourth degree felony. On April 17, 2008, Sidders was arraigned and entered a plea of not guilty. On April 29, 2008, Sidders was appointed counsel.
 {¶ 5} The matter proceeded to trial on May 28, 2008. At the close of the evidence that same day, the jury found Sidders guilty. Sidders was thereafter sentenced to fifteen (15) months, and the trial court ordered the sentence to be served consecutive to the sentence he was then serving for a different matter.
 {¶ 6} On June 11, 2008, Sidders filed this present appeal and now asserts three assignments of error for review.
 ASSIGNMENT OF ERROR NO. I THE JURY'S VERDICT ON THE THEFT OF A MOTOR VEHICLE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE REVERSED.
 {¶ 7} In his first assignment of error, Sidders argues that the jury verdict was against the manifest weight of the evidence. Essentially, Sidders argues that there was no evidence that he was the perpetrator of the auto theft. Sidders contends that the guilty party is Rawlins, and that he was an innocent bystander. Furthermore, Sidders argues that the vehicles were abandoned with the keys in the ignition; and therefore, the State failed to prove that he acted with a purpose to *Page 4 
deprive the owner of his/her property. Moreover, Sidders also argues that he lacked the requisite purpose to deprive, because he simply ran out of gas and could not afford to purchase more gas to return the vehicle.
 {¶ 8} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "`[weigh] the evidence and all reasonable inferences, consider the credibility of witnesses and [determine] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses.State v. DeHass (1967), 10 Ohio St.2d 230, 231, 227 N.E.2d 212.
 {¶ 9} Sidders was convicted on one (1) count of grand theft of a motor vehicle in violation of R.C. 2913.02(A)(2), (B)(5), which provides:
 (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: * * *
 (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent; *Page 5 
 * * *
 (5) If the property stolen is a motor vehicle, a violation of this section is grand theft of a motor vehicle, a felony of the fourth degree.
 {¶ 10} At trial, the State called several witnesses to testify, including: automobile dealership representatives, eye-witnesses and lay witnesses, and law enforcement. Eric Byers, a salesman at Sullivan Auto Sales in Delaware County, Ohio, testified that on September 25, 2007 a male and female couple expressed interest in test driving a 2002 silver Acura TL. (May 28, 2008 Tr. at 27-30). Byers testified that the woman handed him her driver's license, which identified her as Sandra Rawlins. (Id. at 29); (State's Ex. 1). Byers described the male accompanying Rawlins as medium build, 5'7" or so in height, brown hair, wearing a t-shirt and jeans and big earrings, which Byers indicated "weren't just normal like hops [sic]. They will [sic] big holes that went through his ear." (Id.). Byers also testified that Rawlins indicated that she would be paying cash for the car, because she had inherited money. (Id. at 30). Around 11:15 a.m., Rawlins and the male left Sullivan Auto Sales test driving the Acura car. (Id. at 31). About an hour and a half later, Byers became suspicious when the couple did not return with the car and attempted to locate and identify the car Rawlins and the male had driven to the dealership. (Id. at 32). Byers even looked up Rawlins' telephone number in the phone book and talked with her husband, who indicated "this isn't the first *Page 6 
time she's been in trouble for something like this * * * hopefully, you get your car back." (Id. at 32-33).
 {¶ 11} Soon after talking with Rawlins' husband, a worker from a neighboring barber shop stopped by the dealership and asked Byers if he owned a Black Firebird, because it had been parked in his lot all day. (Id. at 33). Byers became suspicious and ran the Firebird's vehicle identification number (VIN) and discovered that it belonged to another Delaware dealership called Final Stop. (Id.). The Firebird had been abandoned with the keys in the ignition, along with a few pairs of pants, shirts, and a box left inside the car. (Id.). At that point, Byers suspected that Rawlins and the male left the Firebird, took the Acura, and were not returning, so he called the sheriff's office. (Id.).
 {¶ 12} Byers testified that the Acura was found abandoned at a diner in Marysville, Ohio. (Id. at 35). The diner's owner had found a car parked in his lot with the keys in the ignition and with a dealership license plate, so the owner called the dealership and informed them that he/she had the car. (Id.). Byers indicated that the vehicle was not damaged. (Id. at 36). When asked if the defendant was the male who took the Acura, Byers testified:
 He has the same build. He doesn't have the hair that he had. But he has the same build and he has the holes in his ears like I described. But he didn't have a mustache or anything when he was on my lot, so I can't 100 percent say that that's him because he's changed his appearance in last 9 months. *Page 7 
(Id. at 36-37). Byers admitted that he only saw the couple for 10 to 15 minutes while they were at his dealership. (Id. at 37). On cross-examination, Byers admitted that he could not identify Sidders as the male he saw beyond a reasonable doubt because "he meets the description, but his appearance — the appearance has changed." (Id. at 39).
 {¶ 13} Karen Morgan, a saleswoman at Carol Motors in Marysville, Ohio, testified that around 2:00 p.m. on September 25, 2007, a male asked to test drive a 1992 white Cadillac Deville. (Id. at 40-43); (State's Exs. 4-7). Since it was busy that day and she was the only salesperson working, she simply handed him a dealer tag and keys to the vehicle. (Id. at 44-45). Karen assumed that the man saw the company's sign that indicated that test drives were limited to fifteen minutes, but the man never returned with the car. (Id. at 45-46). Around 3:00 to 3:30 p.m. Karen called the police. (Id. at 46). Karen testified that the car was found in Richwood, Ohio with the dealer tag still in the window. (Id. at 46-47); (State's Exs. 4, 8). On cross-examination, Karen admitted that she did not obtain any identification from the male, and that she was unable to identify the man who had taken the car. (Id. at 50).
 {¶ 14} Officer Jason Nichols of the Marysville Police Department testified that he responded to the Carol Motor's report of the stolen 1992 Cadillac Deville around 3:40 p.m. to 3:50 p.m. on September 25, 2007. (Id. at 51-53). Officer *Page 8 
Nichols confirmed that the Cadillac was recovered in Richwood, Ohio. (Id. at 53). Officer Nichols further testified that he processed the car and discovered three latent fingerprints, which he submitted to the lab for evidence. (Id. at 54).
 {¶ 15} Tammy North, a Union County Auditor's office employee, testified that on September 25, 2007 she was driving a newly purchased 2005 Chevy Trailblazer with a temporary tag number N485216. (Id. at 55-58). Shortly after 12:00 p.m. on that day, she arrived at work and parked her car in the parking lot, which is visible from the street. (Id. at 58-59). After she had parked the vehicle and was walking toward the office, she hit the electronic car locks and recalled seeing the temporary tag affixed to the vehicle. (Id. at 58). Shortly after 5:00 p.m., Tammy left the office and returned to her car. (Id. at 58-59). She immediately noticed that the temporary tag had been ripped off the vehicle, so she called the sheriffs office. (Id. at 59-60). After she returned home, Tammy received a phone call from the sheriffs office informing her that they had found her tag in another vehicle in Delaware. (Id. at 60). On cross-examination, Tammy admitted that she did not see Sidders remove the tag from her vehicle. (Id. at 61).
 {¶ 16} Steven Mills, the owner of Mills' Chevy Pontiac in Richwood, Ohio, testified that around 2:45 p.m. on September 25, 2007 a male and female couple entered the showroom and asked him about a Ford Mustang. (Id. at 62-65); (State's Ex. 2). Mills described the female as in her late thirties or early forties, *Page 9 
dark hair, darker eyes, and taller and more talkative than the male. (Id. at 67). Mills testified that the male was younger, in his late twenties or early thirties, about 5'7" to 5'8" in height, and had ear and nose piercings. (Id.). The female asked Mills if the Mustang was an automatic or manual transmission, Mills informed her it was manual, and she indicated that she could not drive it. (Id. at 66). The female asked Mills about a Chevy Cobalt, and Mills directed her attention to a white Pontiac G6 convertible. (Id. at 68); (State's Exs. 3, 9-12). Mills showed the couple the Pontiac, and the female asked if she could take it for a test drive. (Id. at 69).
 {¶ 17} Mills took the couple into his office for a short conversation. (Id. at 72). Mills obtained a copy of the female's driver's license, which identified her as Sandra Rawlins. (Id. at 71); (State's Ex. 1). During this time, Rawlins began to tell Mills how she would pay for the car, which Mills interpreted as Rawlins' effort to qualify for the purchase. (Id. at 72). The male asked if there were any rebates on the car, and Mill responded "yes," but indicated that they could work out figures after they test drove the car. (Id. at 73). Rawlins and the male drove the car away but never returned. (Id. at 74).
 {¶ 18} Around 4:10 p.m. Mills reported the car stolen to the police. (Id.). Mills testified that he did not give Rawlins and the male permission to keep the car, but only to take it for a test drive. (Id. at 75). Mills testified that the police *Page 10 
returned the vehicle with no apparent damage, other than it was missing the window sticker and someone had smoked in the vehicle. (Id.). When asked if Sidders was the male that stole the car with Rawlins, Mills testified, "[a]s I recall. As I recall." (Id. at 76). When specifically asked if he was able to recognize Sidders, Mills testified, "[t]o the best of my knowledge, I believe that is him." (Id.). On cross-examination, Mills testified as follows:
 Q: Now, Miss Chase asked you whether or not you could identify Mr. Sidders as in fact the person that was there that day. And I think your response was to the best of your recollection. I'm going to ask you, I guess, a little bit more specifically. Can you tell me positively that Mr. Sidders was the one that was there at your dealership that day?
 A: He looks awfully close to the person that I saw that day. I can't — I can't tell you any more than that, sir, because it was September 25th.
 Q: Awfully close but you cannot positively identify him?
 A: I won't tell you that. No, sir.
(Id. at 79-80).
 {¶ 19} Kelly Griest testified that on September 25, 2007 she was waiting for her son to get off the school bus when Sandra Rawlins stopped by in a new white car. (Id. at 98-99). Griest's home is located off State Route 257 South in Delaware, Ohio. (Id. at 99). Griest was acquainted with Rawlins because Rawlins had dated one of her ex-husband's friends. (Id.). Griest testified that Sidders, who she knew as "Chris," was riding in the passenger's seat with Rawlins. (Id. at 99-100). Griest testified that Rawlins told her that the white car was a new car that *Page 11 
she was purchasing and asked if she could stay and visit while Sidders went to get gas for the car. (Id. at 101). After fifteen minutes passed and Sidders had not returned with the car, Rawlins became really nervous, and Griest and her drove down to the gas station to find Sidders. (Id. at 102). Unable to find Sidders, the two returned to Griest's home after twenty to twenty-five minutes, and Sidders was at the home with the white car. (Id. at 102-03). Sidders claimed that he forgot his credit card and was unable to get gas so Griest volunteered to drop them off in town to get some money. (Id. at 103).
 {¶ 20} Griest dropped Rawlins and Sidders off, but the two never returned for the white car. (Id.). According to Griest, about three hours after she dropped them off, it looked like it was going to rain, and she noticed that the car's windows were down. (Id. at 103). Griest went out and discovered that Rawlins and Sidders had left the keys in the ignition, and the car had a Mill's dealership tag. (Id. at 103-04); (State's Ex. 12). Griest became suspicious and called the dealership, but no one answered the phone. (Id. at 104). Griest then contacted the police. (Id.)
 {¶ 21} Griest also testified that Sidders looked different at trial than he did when he stopped by her house on September 25, 2007. (Id. at 105). Griest explained that Sidders was now "* * * much more clean cut. He doesn't seem to have piercings like he had before." (Id.). Griest testified that, on September 25th, Sidders "* * * had a piercing in his nose and he had these big earrings." (Id.). On *Page 12 
cross-examination, Griest testified that she discovered that Rawlins was previously incarcerated for stealing a car under similar circumstances. (Id. at 109). Griest explained that this information led her to be suspicious when Rawlins and Sidders did not return for the car. (Id. at 108-09).
 {¶ 22} Deputy Daren Daniels of the Delaware County Sheriffs Department testified that he was dispatched to Sullivan Auto Sales around 4:15 p.m. on September 25, 2007. (Id. at 125). The dealership informed him that Sandra Rawlins had taken a 2002 Acura for a test drive but never returned the vehicle. (Id. at 126). That same day, Deputy Daniels was dispatched regarding a phone call from a home owner on State Route 257 South, Ostrander (Delaware County) Ohio reporting that she believed some friends of hers had left a stolen vehicle on her property. (Id. at 126-27). Deputy Daniels testified that the vehicle in the home owner's driveway was a white Pontiac G6. (Id. at 127). A temporary tag belonging to Tammy North was discovered in car's back seat. (Id. at 128). Deputy Daniels testified that he contacted the Richwood Police Department to process the vehicle. (Id. at 129). Deputy Daniels also testified that the home owner where the stolen car was found was Kelly Griest. (Id. at 130).
 {¶ 23} Sergeant Rebecca Frazier of the Richwood Police Department testified that she investigated the September 25, 2007 reported stolen vehicle from Mills Chevrolet. (Id. at 110-12). Sergeant Frazier identified State's exhibit nine as *Page 13 
a picture of the stolen car she investigated. (Id. at 112); (State's Exs. 9-12). Sergeant Frazier testified that she processed the stolen convertible car and discovered, in the passenger side door jam, a gold "pearl card" Mastercard with "Christoph Sidders" appearing on the card's face. (Id. at 114); (State's Ex. 14). Sergeant Frazier also testified that she found the following items in the car: a pair of red and black, size 36, "Joe Boxer" shorts; a green belt; a black Chevy emblem stocking hat with two eye-holes cut out of it; and a black handled, silver blade four inch knife. (Id. at 116-17); (State's Exs. 14-17). Sergeant Frazier further testified that all of the items were located on the passenger side of the vehicle. (Id. at 120).
 {¶ 24} Only one witness for the defense testified, Michael Scambalone, who had known Sidders most of his life. (Id. at 134). Scambalone testified that Sidders introduced him to Rawlins about six months ago. (Id. at 135). Scambalone testified about a month after he met Rawlins, she offered to buy him a truck with alleged inheritance money. (Id.). Scambalone went to the car dealership with Rawlins and Sidders, picked out and ordered a custom Dodge Dakota truck, but the next day when he attempted to pick up the truck he was informed that Rawlins never paid for it. (Id. at 135-36). Scambalone also testified that Rawlins gave him a purported Western Credit Union check for $5,000, but he did not cash it because Rawlins had not endorsed it nor did it have a routing number. (Id. at 137). Scambalone testified that, at first, he believed Rawlins had *Page 14 
inherited money, but eventually he realized she did not have any money. (Id. at 138).
 {¶ 25} After reviewing all the evidence presented, this Court cannot conclude that the trier of fact clearly lost its way and created a manifest injustice. Thompkins, 78 Ohio St.3d at 387, quotingMartin, 20 Ohio App.3d at 175. Although much of the evidence in this case was circumstantial, circumstantial evidence has the same probative value as direct evidence. State v. Jenks, 61 Ohio St.3d 259, 272,574 N.E.2d 492. Griest testified that Sidders was riding with Rawlins in the stolen white Pontiac G6. She also testified that, at the time of the incident in question, Sidders had nose piercings and big earrings, which is consistent with Byers' and Mills' description of the male that assisted Rawlins in taking cars from the dealerships. Both Mills and Byers also specifically testified that Sidders looked like the male that had stolen their cars with Rawlins. These two men noted that Sidders had the same build and same distinguishing piercing marks as the man that had stolen the cars. Aside from this eye-witness testimony, Sergeant Frazier testified that she located a credit card with "Christoph Sidders" on its face in the stolen Pontiac G6. The jury could have used this evidence, along with Griest's testimony, to identify Sidders as the male that aided Rawlins in stealing the car. Thus, contrary to Sidders' assertion, the jury had evidence to could conclude that he was the perpetrator of the crime. *Page 15 
 {¶ 26} Sidders also argues that the State failed to present evidence to show that he acted with the purpose of depriving the vehicle's owner of its property interest, because the vehicle's keys were left in the ignition and he simply ran out of gas. These arguments lack merit. "Because, aside from an admission of guilt, no direct evidence of a defendant's purpose can exist, the state must rely upon inferences from `the surrounding facts and circumstances' to prove purpose." State v.Buelow, 10th Dist. Nos. 07AP-317, 07AP-318, 2007-Ohio-5929, ¶ 25, citingState v. King (July 18, 1989), 10th Dist. No. 88AP-665, quotingState v. Huffman (1936), 131 Ohio St. 27, paragraph four of the syllabus. "Deprive" is defined as any of the following:
 (1) Withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration;
 (2) Dispose of property so as to make it unlikely that the owner will recover it;
 (3) Accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration.
R.C. 2913.01(C).
 {¶ 27} The jury sub judice had several facts and circumstances from which it could have reasonably concluded that Sidders purposely deprived the car dealership of its property. Specifically, the jury had evidence from which it could *Page 16 
have reasonably concluded that Sidders intended to permanently withhold the dealership's vehicle. R.C. 2913.01(C)(1). Byers testified that the dealership sticker to the Firebird was removed and thrown in the car's back seat. (May 28, 2008 Tr. at 34). Byers also testified that he found a box of pants and shirts in the Firebird. (Id. at 33). Byers testified that the Acura TL was found "backed up in the back part of the [diner] [parking] lot." (Id. at 35) (Emphasis added). Byers further testified that "[t]he [Acura's] tag was taken off the back and thrown in the trunk." (Id. at 36). Similarly, Mills testified that the dealership sticker to the Pontiac G6 was torn off as well. (Id. at 75). Also like the Firebird, the Pontiac G6 was found with several items inside, including male, size 36, boxer shorts, a green belt, a black stocking hat, and a knife. (Id. at 114-17). All of these circumstances could lead a reasonable juror to conclude that Sidders was not planning to return the vehicle; but rather, to keep it permanently.
 {¶ 28} Aside from these circumstances, Deputy Daniels testified that Tammy North's stolen temporary tag was found in the Pontiac G6. (Id. at 128). From this, a reasonable juror could infer that Sidders was planning to use the temporary tag for the Pontiac G6 to conceal the identity of the car's true owner and keep it. (See id. at 145). On top of all of these circumstances, the jury also heard evidence that Rawlins was extremely nervous when Sidders did not return with the Pontiac G6 to Griest's home. (Id. at 101). Griest testified that Sidders left *Page 17 
in the Pontiac G6 to get gas, but she and Rawlins did not find him at the gas station. (Id. at 102). When asked if he was able to get gas, Sidders told Griest and Rawlins that he forgot his credit card; however, Sidders credit card was found in the Pontiac G6, which suggests that he was not being truthful. (Id. at 114). In addition, when Griest dropped Rawlins and Sidders off to get gas money, they never returned. (Id. at 104). From all these circumstances, a reasonable juror could have concluded that Sidders intended to permanently deprive the car dealership of its property.
 {¶ 29} Sidders argues that no reasonable juror could have concluded that he acted with the intent to deprive when he abandoned the vehicle. Under the circumstances of this case, however, abandonment of the vehicle alone was not a sufficient basis for a rational trier of fact to determine that Sidders did not intend to permanently deprive the owner of its property. Cf State v. Mayle, 7th Dist. No. 04 CA 808,2005-Ohio-1346, ¶¶ 39-42, citing State v. Houseman (1990),70 Ohio App.3d 499, 591 N.E.2d 405. Sidders did not present evidence at trial showing that he failed to return the vehicle because it ran out of gas as he now argues or that he had any intent to return any of the vehicles to the dealerships. Even if he had offered such evidence, it is unlikely the outcome would have been different given that: (1) Griest dropped him off to get money for gas, but he never returned; and (2) that Sidders' credit card was found in the Pontiac G6, even though he told *Page 18 
Griest that he left it at home, which raises the issue of Sidders' credibility and suggests that he could have purchased gas to return the vehicle.
 {¶ 30} The dissent argues that "[i]t is obvious that Appellant did not `withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration.'" (Post at 26). That Sidders was ultimately unable to withhold the property permanently is not the issue; rather, the issue is whether he acted with the purpose to permanently deprive. R.C. 2913.02(A). The jury here had sufficient evidence, though perhaps circumstantial, to rationally conclude that Sidders acted with the requisite purpose to permanently deprive.
 {¶ 31} For all these reasons, Sidders' first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. II APPELLANT'S ATTORNEY FAILED TO PROVIDE HIM WITH THE TYPE OF COUNSEL GUARANTEED BY THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN HE FAILED TO SUBMIT PROPOSED JURY INSTRUCTIONS, WHEN HE FAILED TO OBJECT TO THE JURY INSTRUCTIONS AS GIVEN BY THE COURT AND WHEN HE FAILED TO ASK FOR A CONTINUANCE WHEN HIS WITNESSES WERE NOT TIMELY SERVED THEIR SUBPOENAS.
 {¶ 32} In his second assignment of error, Sidders argues that trial counsel was ineffective because he: (1) failed to submit proposed jury instructions and *Page 19 
object to the court's instructions that included complicity and conspiracy language; (2) failed to seek a continuance when several witnesses failed to appear for trial; and (3) failed to inquire more about Rawlins' prior motor vehicle theft record. We disagree.
 {¶ 33} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. State v. Kole (2001), 92 Ohio St.3d 303, 306,750 N.E.2d 148, citing Strickland v. Washington (1984), 466 U.S. 668,687, 104 S.Ct. 2052, 80 L.Ed.2d 674. In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. Strickland, 466 U.S. at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie (1998),81 Ohio St.3d 673, 675, 693 N.E.2d 267. Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. State v. Carter (1995), 72 Ohio St.3d 545, 558,651 N.E.2d 965. Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. See State v.Bradley (1989), *Page 20 42 Ohio St. 3d 136, 141-142, 538 N.E.2d 373, quoting State v. Lytle (1976),48 Ohio St.2d 391, 396, 358 N.E.2d 623.
 {¶ 34} Sidders' arguments lack merit. To begin with, evidence of Rawlins' prior motor vehicle thefts was presented to the jury. Byers testified that, after Rawlins and Sidders failed to return his vehicle, he looked up Rawlins' telephone number in the phone book and talked with her husband, who indicated "this isn't the first time she's been in trouble for something like this * * * hopefully, you get your car back." (May 28, 2008 Tr. at 32-33). Griest testified that she discovered that Rawlins had been previously incarcerated for stealing a car. (Id. at 109). Aside from the fact that this evidence was available to the jury, it might well have been trial counsel's tactical decision not to emphasize Rawlins' prior criminal history because such evidence might have implicated Sidders in his case, especially in light of the fact that it was alleged the two stole the vehicles together. Accordingly, trial counsel was not ineffective for failing to offer more evidence of Rawlins' prior criminal history.
 {¶ 35} Sidders' argument that trial counsel was ineffective for failing to request a continuance to obtain several witnesses' attendance lacks merit as well. Sidders has not offered this Court any indication what, if any, exculpatory evidence these witnesses would have offered. Under these circumstances, we cannot find that trial counsel was ineffective for failing to seek a continuance. *Page 21 State v. Taylor, 9th Dist. No. 06CA009000, 2008-Ohio-1462, ¶ 31, citingState v. Peck, 2d Dist. No. 21354, 2006-Ohio-5796, ¶ 65 (denying ineffective assistance claim on direct appeal because record failed to indicate how missing witness's testimony would have been helpful).
 {¶ 36} Sidders further alleges that trial counsel was ineffective for failing to object to the trial court's complicity and conspiracy jury instructions. This argument is meritless. R.C. 2923.03 defines complicity and provides, in pertinent part:
 (A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 (1) Solicit or procure another to commit the offense;
 (2) Aid or abet another in committing the offense;
 (3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;
 * * *
 (F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.
 {¶ 37} "The prosecution may charge and try an aider and abettor as a principal[,] and if the evidence at trial reasonably indicates that the defendant was an aider and abettor rather than a principal offender, a jury instruction regarding complicity may be given." State v.Demecs, 6th Dist. No. F-05-021, 2006-Ohio-3802, ¶ 18, *Page 22 
citing State v. Wagers (Sept. 20, 1993), 12th Dist. No. CA92-11-231. On appellate review, a sole jury instruction must not be isolated but read within the context of the jury instructions as a whole. State v. Moore, 3d Dist. No. 12-06-18, 2007-Ohio-5905, ¶ 26, citing State v. Coe (June 4, 1998), 3d Dist. No. 13-97-46, citingState v. Taylor (1997), 78 Ohio St.3d 15, 29-30, 676 N.E.2d 82;State v. Price (1979), 60 Ohio St.2d 136, 398 N.E.2d 772, paragraph four of the syllabus.
 {¶ 38} Here, the evidence at trial indicated that Sidders was complicit in the theft, i.e. that he aided and abetted Rawlins in stealing the vehicle. According to the testimony, Sidders was present with Rawlins during the car theft; and in fact, Mills testified that Sidders asked if there were any rebates on the car, which indicates that he was actively participating in the thefts. (May 28, 2008 Tr. at 73). Furthermore, Griest identified Sidders as Rawlins' passenger in the Pontiac G6, and Sergeant Frazier located a credit card in Sidders' name in the stolen Pontiac G6. (Id. at 99-100, 114); (State's Ex. 14). Since the evidence here indicated that Sidders aided and abetted Rawlins in stealing the vehicle, the trial court's complicity instruction was appropriate; and thus, trial counsel was not ineffective for failing to object to the instruction. For this same reason, trial counsel was also not ineffective for failing to submit jury instructions without complicity language.
 {¶ 39} Sidders also argues that the trial court improperly instructed on conspiracy as if it were a separate indicted offense. This is not entirely accurate. *Page 23 
R.C. 2923.03(A)(3) defines complicity, in part, to include "[c]onspire with another to commit the offense in violation of section 2923.01 of the Revised Code." When the jury instructions are read in context, it appears that the trial court defined the term "conspire" for purposes of the complicity statute, not a separate indicted offense as Sidders suggests. (May 28, 2008 Tr. at 163). That being said, the trial court's instruction on R.C. 2923.03(A)(3) complicity by conspiracy was in error because theft is not one of the enumerated offenses in R.C. 2923.01.State v. Armas, 12th Dist. No. CA2004-01-007, 2005-Ohio-2793, ¶¶ 42-43;State v. Cotton (Apr. 12, 1990), 8th Dist. No. 56775 at *3. See, also,State v. Salem, 5th Dist. No. 04 CA 8, 2005-Ohio-1610, ¶ 24. However, under the circumstances of this case, we find that the trial court's erroneous instruction was harmless. As previously noted, there was ample evidence in the record from which a reasonable trier of fact could have concluded that Sidders aided and abetted Rawlins in stealing the vehicle. As such, the jury could have found Sidders guilty of complicity to commit theft under R.C. 2923.03(A)(2). Furthermore, there was sufficient evidence from which a rational trier of fact could have even concluded that Sidders was the principal. As such, Sidders has failed to show how he was prejudiced from counsel's error; and thus, trial counsel was not ineffective for failing to object to the instruction.
 {¶ 40} Sidders' second assignment of error is, therefore, overruled. *Page 24 
 ASSIGNMENT OF ERROR NO. III THE TRIAL COURT CREATED PREJUDICIAL ERROR WHEN IT GAVE JURY INSTRUCTIONS THAT INCLUDED THE LANGUAGE FOR BOTH CONSPIRACY AND COMPLICITY, IN ADDITION TO THE ELEMENTS OF THE OFFENSE OF THEFT OF A MOTOR VEHICLE; AND THE TRIAL COURT ERRED WHEN IT DID NOT DISCUSS THE CONTENT OF THE JURY INSTRUCTIONS WITH THE ATTORNEYS SO APPELLANT, THROUGH HIS ATTORNEY COULD PROPERLY OBJECT TO THE INSTRUCTIONS BEFORE THEY WERE SUBMITTED TO THE JURY. AS A RESULT, THE JURY VERDICT ON THE FELONY THEFT COUNT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND THE CONVICTION SHOULD BE REVERSED.
 {¶ 41} In his third assignment of error, Sidders, again, argues that the trial court erred in instructing the jury on complicity and conspiracy. He further argues that the trial court erred by not disclosing the jury instructions to his attorney so that counsel could properly object. In addition, Sidders argues that his conviction is not supported by sufficient evidence. We disagree.
 {¶ 42} As we found in assignment of error two, the trial court's instruction defining "conspire" for purposes of the complicity statute was erroneous but harmless under the facts and circumstances of this case. As to Sidders' argument that the trial court failed to disclose the jury instructions for a proper objection, this argument is factually inaccurate. The trial court did read the jury instructions in trial counsel's presence and asked if there were any "objections, corrections, additions, or modification." (May 28, 2008 Tr. at 168). The State moved to amend *Page 25 
the instructions and verdict forms to reflect the indictment's charged offense under R.C. 2913.02(A)(2), and not (A)(1). (Id. at 169). Sidders' attorney then indicated that he had nothing further. (Id. at 170). Finally, Sidders' argument that his conviction was not supported by sufficient evidence is without merit. Since we have found that Sidders' conviction was not against the manifest weight of the evidence, we also find that Sidders' conviction was supported by sufficient evidence.State v. Rutledge (June 1, 2001), 2d Dist. No. 18462 at *3; State v.Mitchell, 5th Dist. No. CT2006-0090, 2007-Ohio-5519, ¶ 66; State v.Bergsmark, 6th Dist. No. L-03-1137, 2004-Ohio-5753, ¶ 8; State v.Stubbs, 8th Dist. No. 89883, 2008-Ohio-5983, ¶ 7; State v. Adams, 9th Dist. No. 07-CA-0086, 2008-Ohio-4939, ¶ 66; State v. Jones, 10th Dist. No. 08AP-260, 2008-Ohio-6963, ¶ 14; State v. McCrory, 11th Dist. No. 2006-P-0017, 2006-Ohio-6348, ¶ 40; State v. Wilkins, 12th Dist. No. CA2007-03-007, 2008-Ohio-2739, ¶ 22.
 {¶ 43} Sidders' third assignment of error is overruled.
 {¶ 44} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed
 SHAW, J., concurs. *Page 26