[Cite as *State v. Colburne*, 2015-Ohio-4348.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.   27553 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| ROYCE A. COLBURNE | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.    CR 2014 04 1035 |

DECISION AND JOURNAL ENTRY

Dated: October 21, 2015

---

MOORE, Judge.

{¶1} Defendant-Appellant Royce Colburne appeals from the judgment entry of the Summit County Court of Common Pleas. We affirm in part, and reverse in part.

I.

{¶2} In April 2014, Mr. Colburne was indicted on two counts of aggravated trafficking in drugs (one count involving hydromorphone and one count involving oxycodone) in violation of R.C. 2925.03(A)(C)(1) and  two counts of aggravated possession of drugs (one count involving hydromorphone and one count involving oxycodone) in violation of R.C. 2925.11(A)(C)(1). Each of the foregoing charges included an attendant forfeiture specification and was a third-degree felony. Additionally, Mr. Colburne was charged with one count of illegal use or possession of drug paraphernalia in violation of R.C. 2925.14(C)(1), a fourth-degree misdemeanor, and one count of possession of marijuana in violation of R.C. 2925.11(A)(C)(3), a minor misdemeanor. Ultimately, Mr. Colburne pleaded guilty to the indictment. Mr. Colburne

filed a motion to merge the sentences for the four felony charges, which the trial court denied at the time of sentencing. The trial court, in its sentencing entry, placed Mr. Colburne on two years of community control and indicated that, if he violated community control, he would be sentenced to an aggregate term of 30 months in prison.

{¶3} Mr. Colburne has appealed, raising three assignments of error for our review.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED WHEN IT IMPOSED SEPARATE SENTENCES FOR OFFENSES THAT AROSE FROM THE SAME CONDUCT, WERE NOT COMMITTED SEPARATELY OR WITH SEPARATE ANIMUS, AND SHOULD HAVE BEEN MERGED FOR SENTENCING PURPOSES UNDER R.C. 2941.25.

{¶4} Mr. Colburne asserts in his first assignment of error that the trial court erred in imposing separate sentences for allied offenses. Specifically he argues that, "[t]he [t]rial [c]ourt failed to properly address [his] request that his felony charges merge for purposes of sentencing[.]" Additionally, he broadly asserts that his sentences on the four felony charges merge, but only specifically discusses in any detail the merger of his sentences for trafficking with his sentences for possession.

{¶5} "We 'apply a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination.'" *State v. Evett,* 9th Dist. Medina No. 14CA0008-M, 2015-Ohio-2722, ¶ 35, quoting *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 28. Nonetheless, "[i]t is the defendant's burden to establish his or her entitlement to the protections of Section 2941.25." *State v. Stoddard,* 9th Dist. Summit No. 27426, 2015-Ohio-3750, ¶ 38, quoting *State v. Dembie,* 9th Dist. Lorain No. 14CA010527, 2015-Ohio-2888, ¶ 8. R.C. 2941.25 provides that:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶6} In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, the Supreme Court of Ohio clarified how courts are to determine whether offenses are allied within the meaning of the statute. "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. [Thus, t]he evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import." *Evett* at ¶ 36, quoting *Ruff* at ¶ 26. "[C]ourts must ask three questions when [a] defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions." *Evett* at ¶ 36, quoting *Ruff* at ¶ 31. "[T]wo or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Evett* at ¶ 36, quoting *Ruff* at ¶ 26.

{¶7} Because this case was resolved via a plea agreement, the factual background in the record is somewhat limited. Nonetheless, the presentence investigation report ("PSI") states that:

[Mr. Colburne] was arrested on April 11, 2014 by the Akron Police Department under the following summarized circumstance[s] as contained in the police report:

The SNUD Unit wished to serve a search warrant upon [Mr. Colburne's] apartment residence on Cromwell Drive, noting [Mr. Colburne] had been the

target of a previous narcotics investigation at the same address. [Mr. Colburne] was located as he drove his Trailblazer. He ran two stop signs, prompting the officers to initiate a traffic stop.

Approaching [Mr. Colburne], the officers could see a baggie protruding from [his] sweatshirt pocket. The baggie was recovered and found to contain thirty-one 10 mg oxycodone pills. The officers further found twenty-four hydromorphone pills, one hundred thirty-nine 5 mg oxycodone pills, and 7.7 grams of marijuana.

[Mr. Colburne] was taken into custody and returned to his residence, where the search warrant was executed. Two mason jars were found containing 10 mg of marijuana, after [Mr. Colburne] stated it was in the closet.

After receiving his rights, [Mr. Colburne] said he had purchased the pills that were found on him from a male he would not identify. He said he sold the pills to support his percocet addiction. He stated his live-in girlfriend had no knowledge of what he was doing.

{¶8} During the sentencing hearing, the State clarified that, "[i]mmediately prior to the execution of * * * that warrant at [Mr. Colburne's] home he had 32 [o]xycodone pills in his pocket, $415 in the car, 139 [o]xycodone pills more in the car. He also had hydromorphone and marijuana." Mr. Colburne did not object to the State's foregoing recitation of events.

{¶9} As noted above, in addition to his two misdemeanor convictions, Mr. Colburne was convicted of two counts of aggravated trafficking in drugs (one count involving hydromorphone and one count involving oxycodone) and two counts of aggravated possession of drugs (one count involving hydromorphone and one count involving oxycodone). Prior to sentencing, Mr. Colburne filed a motion seeking merger of the related aggravated trafficking and aggravated possession charges and merger of the hydromorphone charges and oxycodone charges for the possession offenses and trafficking offenses.

{¶10} At sentencing, the trial court explicitly denied his motion and sentenced Mr. Colburne on all counts. According to the judgment of conviction, the trial court placed Mr. Colburne on two years of community control and indicated that, if he violated community control, he would be sentenced to an aggregate term of 30 months in prison. The entry reflects

that Mr. Colburne would receive 12 months on each aggravated trafficking charge (counts one and two) and six months on each aggravated possession charge (counts three and four), and 30 days in jail on the drug paraphernalia charge (count five). Counts one through three were to be served consecutively to each other and counts four and five were to be served concurrent with each other and with counts one through three.[1]

{¶11} On appeal, without any citations to any law or authority, Mr. Colburne asserts the trial court failed "to properly address the issue of merger of the counts[.]" Given Mr. Colburne's limited and undeveloped argument on this point, and the fact that the trial court specifically denied his motion, we see no basis for concluding that the trial court failed to properly *address* merger at the time of sentencing. Mr. Colburne has not pointed us to any authority requiring the trial court to detail the reasons for denying a motion for merger of offenses. Whether the trial court was correct in concluding that the offenses do not merge is a separate and distinct issue from whether the trial court properly addressed the issue of merger.

{¶12} With respect to Mr. Colburne's argument concerning the merger of the aggravated trafficking charge of hydromorphone (count one) and the aggravated possession of hydromorphone charge (count three), the State has conceded on appeal that the sentences for those two offenses should merge.

{¶13} R.C. 2925.03(A)(2) provides that "[n]o person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the

---

[1] With respect to count six, the possession of marijuana charge, the trial court ordered Mr. Colburne to pay a fine.

offender or another person." Pursuant to R.C. 2925.03(C)(1), "[i]f the drug involved in the violation is any compound, mixture, preparation, or substance included in schedule I or schedule II, with the exception of marihuana, cocaine, L.S.D., heroin, hashish, and controlled substance analogs, whoever violates division (A) of this section is guilty of aggravated trafficking in drugs." R.C. 2925.11(A) provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." R.C. 2925.11(C)(1) states that, "If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, cocaine, L.S.D., heroin, hashish, and controlled substance analogs, whoever violates division (A) of this section is guilty of aggravated possession of drugs." Hydromorphone[2] is a Schedule II controlled substance. *See* R.C. 2925.01(A); R.C. 3719.01(C), (BB); R.C. 3719.41(A)(1)(k).

{¶14} In conceding error, the State acknowledges that there was only one set of 24 pills of hydromorphone found, and thus, the same pills formed the basis for both the trafficking and the possession charges. In light of the limited factual record, we agree that Mr. Colburne's conduct of possessing the hydromorphone pills was the same conduct that resulted in his conviction for trafficking in hydromorphone. Further there is nothing to suggest that Mr. Colburne possessed a separate animus that would allow for Mr. Colburne to be sentenced on both counts. Thus, we agree that the trial court erred in sentencing Mr. Colburne on both counts one and three.

---

[2] Oxycodone is also a Schedule II controlled substance. *See* R.C. 2925.01(A); R.C. 3719.01(C), (BB); R.C. 3719.41(A)(1)(n).

{¶15} Mr. Colburne also maintains that the sentences for aggravated trafficking in oxycodone (count two) and aggravated possession of oxycodone (count four) should also merge. The State does not concede error on this issue. The State points out that Mr. Colburne possessed thirty-one or thirty-two[3] 10 mg oxycodone pills and one hundred thirty-nine 5 mg oxycodone pills. The smaller quantity was initially found on his person, and the larger quantity was thereafter found in his vehicle. Thus, on appeal, the State essentially argues that, with respect to the oxycodone charges, Mr. Colburne was not convicted of trafficking and possessing the same oxycodone pills. Mr. Colburne's argument on this point is very limited. He has not explained why the oxycodone offenses should be treated like the hydromorphone offenses when the oxycodone offenses involve two separate sets of pills of different quantities and dosages found in different locations and the hydromorphone offenses involve only one. Given that one amount of one dosage of oxycodone was found on his person, and another larger amount of a different dosage of oxycodone was found in his car, one could reasonably infer that he had a separate animus for possessing the different quantities. Further, in light of Mr. Colburne's limited argument, we cannot say that he has demonstrated that the trial court erred in sentencing him for both aggravated trafficking in oxycodone and aggravated possession of oxycodone.

{¶16} With respect to whether the sentences for the oxycodone offenses and the hydromorphone offenses should have merged (e.g. whether the sentence for the aggravated trafficking of oxycodone would merge with the sentence for the aggravated trafficking of hydromorphone), we conclude that Mr. Colburne has not adequately developed an argument on this issue. Instead, Mr. Colburne has cited general propositions of law, recited the facts, and generally alleged that the trial court "improperly convicted [Mr.] Colburne of four separate

---

[3] The PSI refers to 31 but the sentencing transcript refers to 32.

charges through its sentencing entry[]" due to a "shotgun indictment[.]" At no point has Mr. Colburne applied the law to the facts of this case and *explained* how the trial court erred. Mr. Colburne has offered no analysis explaining why the sentences for these offenses should merge when they involve different drugs. *See State v. Helmick,* 9th Dist. Summit No. 27179, 2014-Ohio-4187, ¶ 26, quoting *State v. Williams,*4th Dist. Scioto No. 11CA3408, 2012-Ohio-4693, ¶ 85. ("Generally, '[c]rimes relating to different controlled substances are of dissimilar import and do not merge.'"). "If an argument exists that can support this [portion of this] assignment of error, it is not this [C]ourt's duty to root it out." *Cardone v. Cardone,* 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998).

{¶17} In summary, Mr. Colburne's first assignment of error is sustained in part and overruled in part. The trial court erred in sentencing Mr. Colburne for both aggravated trafficking in hydromorphone and aggravated possession of hydromorphone. Upon remand, the State shall elect which of the two offenses it wishes to pursue for sentencing, and the trial court shall conduct a de novo sentencing hearing on that charge. *See State v. Wilson,* 129 Ohio St.3d 214, 2011-Ohio-2669, ¶ 15, 18.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR BY SENTENCING [MR.] COLBURNE TO CONSECUTIVE SENTENCES IN VIOLATION OF R.C. 2929.14(C).

{¶18} Mr. Colburne asserts in his second assignment of error that the trial court failed to make the appropriate findings pursuant to R.C. 2929.14(C) at the sentence hearing or in the sentencing entry. We agree.

{¶19} The trial court ordered counts one (aggravated trafficking in hydromorphone), two (aggravated trafficking in oxycodone), and three (aggravated possession of hydromorphone)

to be served consecutively. Above, we concluded that the sentences for counts one and three should merge. Nonetheless, the sentence for count two was unaffected by that analysis and so this issue of whether the trial court complied with R.C. 2929.14(C) is still before us.

{¶20} "A plurality of the Supreme Court of Ohio held that appellate courts should implement a two-step process when reviewing a felony sentence." *State v. Blackert*, 9th Dist. Summit Nos. 27314, 27315, 2015-Ohio-2248, ¶ 7, quoting *State v. Bulls*, 9th Dist. Summit No. 27029, 2015-Ohio-276, ¶ 26, quoting *State v. Clayton*, 9th Dist. Summit No. 26910, 2014-Ohio-2165, ¶ 43, citing *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, ¶ 26. "The first step, reviewed de novo, is to ensure that the trial court complied with applicable rules and statutes in imposing the sentence." *Blackert* at ¶ 7, quoting *Bulls* at ¶ 26, quoting *Clayton* at ¶ 43. "If the first step is satisfied, the second [step] is to review the term of imprisonment for an abuse of discretion." *Blackert* at ¶ 7, quoting *Bulls* at ¶ 26, quoting *Clayton* at ¶ 43.

{¶21} R.C. 2929.14(C)(4) provides:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶22} "With exceptions not relevant here, if the trial court does not make the factual findings required by R.C. 2929.14(C)(4), then 'a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state, another state, or the United States.'" *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 23, quoting R.C. 2929.41(A). "When imposing consecutive sentences, a trial court must state the required findings as part of the sentencing hearing[; h]owever, a word-for-word recitation of the language of the statute is not required[.]" *State v. Kilmire*, 9th Dist. Summit Nos. 27319, 27320, 2015-Ohio-665, ¶ 16, quoting *Bonnell* at ¶ 29. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Kilmire* at ¶ 16, quoting *Bonnell* at ¶ 29. "[T]he court should also incorporate its statutory findings into the sentencing entry." *Kilmire* at ¶ 16, quoting *Bonnell* at ¶ 29.

{¶23} The parties do not dispute that at the sentencing hearing, the trial court failed to explicitly make the required findings using the language in the statute. However, the State argues that one can infer from the trial court's statements at sentencing that it made the required findings. *See Bonnell* at ¶ 33. At sentencing, the trial court pointed out that Mr. Colburne had pleaded guilty to four felonies and two misdemeanors. The State maintains that this indicates that the trial court found that the crimes "were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct." R.C. 2929.14(C)(4)(b). Additionally, it noted that Mr. Colburne has previously successfully

completed intervention in lieu of conviction, but nonetheless committed the crimes at issue. Thus, the trial court expressed concern that Mr. Colburne "knew what [he] was doing when [he] got involved with this again." The State argues that the foregoing indicates that the trial court found that, consecutive sentences were necessary to protect the public from future crime, and were "not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." R.C. 2929.14(C)(4). Finally, near the end of the sentencing hearing, the trial court commented on Mr. Colburne's poor driving record, but nonetheless assured him that he could have driving privileges for work and to visit his children. The State maintains that the trial court's comments about Mr. Colburne's driving record indicate that the trial court found that his "history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime[.]" R.C. 2929.14(C)(4)(c).

**{¶24}** We are not persuaded by the State's argument. We conclude that the State's argument reads far too much into the trial court's limited statements. For instance, we cannot say that the trial court's statement listing Mr. Colburne's offenses warrants a conclusion that the trial court made a finding under R.C. 2929.14(C)(4)(b), or the trial court's comments about Mr. Colburne's driving record warrant a conclusion that the trial court made a finding under R.C. 2929.14(C)(4)(c). After reviewing the sentencing transcript and PSI, we conclude that the trial court failed to make the required findings pursuant to R.C. 2929.14(C)(4). Further, the trial court failed to incorporate any findings into its sentencing entry. Thus, the trial court's decision to run the sentences at issue consecutively was contrary to law. *See Bonnell,* 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 37.

**{¶25}** Given the foregoing, we sustain Mr. Colburne's assignment of error, vacate the affected sentence, and remand the matter to the trial court for resentencing. *See id.*

**ASSIGNMENT OF ERROR III**

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR BY NOT NOTIFYING [MR.] COLBURNE OF THE CONSEQUENCES OF VIOLATING COMMUNITY CONTROL AS REQUIRED BY R.C. 2929.19(B)(4).

{¶26} Mr. Colburne asserts in his third assignment of error that the trial court erred in failing to notify him of the consequences of violating community control as required by R.C. 2929.19(B)(4).

{¶27} R.C. 2929.19(B)(4) provides that:

If the sentencing court determines at the sentencing hearing that a community control sanction should be imposed and the court is not prohibited from imposing a community control sanction, the court shall impose a community control sanction. The court shall notify the offender that, if the conditions of the sanction are violated, if the offender commits a violation of any law, or if the offender leaves this state without the permission of the court or the offender's probation officer, the court may impose a longer time under the same sanction, may impose a more restrictive sanction, or may impose a prison term on the offender and shall indicate the specific prison term that may be imposed as a sanction for the violation, as selected by the court from the range of prison terms for the offense pursuant to section 2929.14 of the Revised Code.

{¶28} In discussing the statute when it was numbered as R.C. 2929.19(B)(5), the Supreme Court of Ohio concluded that "a trial court sentencing an offender to a community control sanction is required to deliver the statutorily detailed notifications at the sentencing hearing." *State v. Brooks,* 103 Ohio St.3d 134, 2004-Ohio-4746, ¶ 15.

{¶29} While the trial court did discuss the prison terms it would impose, it did not otherwise inform Mr. Colburne of the statutorily required notifications under R.C. 2929.19(B)(4). The trial court did not notify Mr. Colburne that violating the conditions of community control, violating another law, or leaving the state without permission could result in additional sanctions, including the prison terms outlined by the trial court. *See* R.C. 2929.19(B)(4). *See State v. Jones,* 6th Dist. Lucas No. L-03-1321, 2005-Ohio-5736, ¶ 14. Even

though the required language is contained in the sentencing entry, it is insufficient to meet the notification requirement because *Brooks* requires the notification take place at the sentencing hearing. *See Brooks* at ¶ 15. While *Brooks* indicates that generally a remand for resentencing in these cases is inappropriate, it did so with the understanding that the majority of cases would involve appeals from violations of community control, at which point the mandated notifications would not serve their intended purpose. *See Brooks* at ¶ 33. Here, however, Mr. Colburne has not yet violated community control, and so we conclude resentencing to include the required notification would be appropriate. *See Jones* at ¶ 15; *State v. Moore,* 6th Dist. Ottawa No. OT-04-034, 2005-Ohio-1579, ¶ 32; *but see State v. Williard,* 5th Dist. Coshocton No. 04CA010, 2004-Ohio-5880, ¶ 18-23 (concluding that this type of argument was premature when the defendant did not have community control revoked or prison imposed).

{¶30} We note that Mr. Colburne also states at the end of his brief that the "sentencing colloquy failed to include a notification of post[-]release control." Because we have already decided that his sentence must be reversed, and this limited argument is beyond the scope of his assignment of error, we decline to address this issue. The trial court can address this issue when it conducts Mr. Colburne's new sentencing hearing.

{¶31} Mr. Colburne's third assignment of error is sustained to the extent that he asserts that the trial court failed to give the appropriate R.C. 2929.19(B)(4) notification at the sentencing hearing.

III.

{¶32} Mr. Colburne's first assignment of error is sustained in part and overruled in part. Specifically, counts one and three must merge for purposes of sentencing, and thus the sentences on those two counts are vacated. The State must elect which count to pursue for purposes of

sentencing and the trial court must conduct a de novo sentencing hearing on that count. Further, Mr. Colburne's second assignment of error and stated third assignment of error are sustained.

Judgment affirmed in part,
vacated in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

CARLA MOORE
FOR THE COURT

HENSAL, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

CHRISTOPHER M. VANDEVERE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.