[Cite as *State v. Goldberg*, 2023-Ohio-2633.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2022-12-075 |
| | : | O P I N I O N |
| - vs - | | 7/31/2023 |
| | : | |
| MICHAEL JOSEPH GOLDBERG, | : | |
| Appellant. | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 21CR38089

Christopher Bazeley, for appellant.

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee

**PIPER, J.**

{¶ 1} In May 2021, appellant, Michael Goldberg, was indicted in the Warren County Court of Common Pleas on two counts of grand theft, both felonies of the fourth degree. Goldberg pled not guilty to the charges and the matter proceeded to a bench trial on October 4, 2022. The trial court found Goldberg guilty on both counts, and Goldberg now timely appeals his conviction and sentence.

{¶ 2} The charges of the indictment stemmed from Goldberg's rental of a flatbed trailer from Benedict Enterprises, Incorporated ("BEI") in 2017. The state alleged that, in December 2018, Goldberg stopped making payments on the trailer and when BEI attempted to contact Goldberg, it was unsuccessful. Ultimately, BEI could not recover the trailer or the overdue rental fees, which totaled $11,874.18 at the time of trial.

{¶ 3} The testimony at trial revealed that Goldberg had been a truck driver for 22 years. During that time, he operated his own trucking company, 247, Inc. In 2014, Goldberg encountered BEI, a company located in Monroe, Ohio that leases a variety of trucking equipment. Initially, Goldberg rented a storage container from the company. Thereafter, in November 2017, Goldberg rented the trailer. BEI purchased the trailer at issue in 2015 for $23,000 plus fees and taxes. According to BEI's general manager, Ryan Rupp, the estimated value of the trailer at the time of trial was $25,000.

{¶ 4} Upon renting the trailer, Goldberg executed a Short-Term Lease Agreement with BEI, which provided that Goldberg would report any accident, loss of or damage to the trailer to BEI immediately. Later at trial, it was undisputed that this never happened. Pursuant to that agreement, Goldberg rented the trailer from BEI on a bi-weekly basis for $311.25, plus tax. Again, at trial, it was undisputed that all the payments owed were not forthcoming. Goldberg completed a credit card authorization form, which provided his payment information, his company name of 247, Inc., his phone number, and an address of 7464 Butler Warren Road, Unit B, Mason, Ohio 45214. The credit card information was a MasterCard with an expiration date of October 2019.

{¶ 5} After making a payment in December 2018, Goldberg's credit card on file began declining payment. Goldberg never notified BEI that he was terminating the lease, nor did he return the trailer to BEI or settle his account. Although there had been prior issues with delayed payments, BEI never had trouble contacting Goldberg prior to

December 2018, and Goldberg always responded by providing past payments due.[1] After Goldberg failed to respond and remedy a missed payment, and because he retained possession of BEI's trailer, BEI continued its bi-weekly attempts to process the payments due.

{¶ 6} Later, BEI attempted to contact Goldberg in several ways, including sending a certified letter to the address listed on the credit card authorization form he completed when he leased the trailer. The certified letter was dated February 27, 2019, and informed Goldberg of BEI's intent to repossess the trailer due to his nonpayment. The letter was returned to BEI as undeliverable. It was later determined that the zip code provided on the 2017 credit card authorization form was incorrect, as Goldberg listed the zip code for his prior residence in Cincinnati, Ohio, not his then-current address in Mason, Ohio.

{¶ 7} On March 11, 2019, BEI contacted police regarding the missing trailer. However, BEI also continued attempts to contact Goldberg. BEI attempted to contact Goldberg via Facebook Messenger, but the Facebook audio call was never answered or opened. Rupp testified that he assumed Goldberg had Facebook or Facebook Messenger on his phone and would have had access to the Facebook audio call, but acknowledged he was not friends with Goldberg on Facebook and was aware of Facebook settings that prevented non-friends from contacting a Facebook user. BEI also sent a billing statement every month; however, Rupp testified those statements included the incorrect zip code.

{¶ 8} In December 2019, Rupp made contact with Goldberg's wife, who suggested the trailer might be at Goldberg's shop located in the Mason or West Chester area. Upon visiting Goldberg's shop in January 2020, Rupp was unable to locate the trailer. Another employee of BEI went to Goldberg's address on Butler Warren Road to look for the trailer,

---

1. It appears Goldberg's credit card required prepaid money to be available, which was not forthcoming on several occasions.

but it was not located.

{¶ 9} A second BEI employee, June Wolfe, testified regarding her efforts to locate Goldberg after the certified letter was returned as undeliverable. At that time, she believed Goldberg had moved to Cincinnati and had "tracked him" to at least two different addresses. She came to this belief based upon "the internet" and that she "followed him." According to Wolfe, she sent a certified letter to one address in Cincinnati, though she did not have a copy of that letter and could not recall the street address. Wolfe also attempted to reach Goldberg by telephone, which she had successfully done in the past. Despite the company's many attempts, no one from BEI had any contact with Goldberg after December 2018.

{¶ 10} In March 2019, after the trailer went missing and after BEI sent the initial notice of intent to repossess the trailer, Goldberg went to BEI and emptied the rented storage container. According to Rupp, the storage container was on BEI property at the time, and BEI sent letters requesting Goldberg to empty the container's contents. One of those letters was admitted into evidence, and bears the incorrect zip code for Mason, Ohio. Although Goldberg did not respond to the letters, he went to BEI and emptied the container shortly after they were sent. While doing so, Goldberg did not speak to anyone from BEI about the trailer, nor did he notify BEI that he was returning the storage container or ending his lease.

{¶ 11} The matter was subsequently turned over to BEI's collection agency, which attempted to contact Goldberg. During Rupp's testimony regarding the agency's attempts to contact Goldberg, the state offered Exhibit 10 into evidence. Exhibit 10 consists of a statement the agency sent to Goldberg, which indicates that a balance of $11,756.48 was due to BEI. The statement was mailed to Goldberg at 5887 Griffindale Drive, Cincinnati, Ohio 45239-6260 on June 14, 2020. According to Rupp, the agency later provided the

statement, along with four pages of notes, to BEI.[2]  The four pages of notes reflect the agency's "internal notations," and Rupp highlighted certain notations he considered to be "key sentences."  Those notations include an entry on June 15, 2020, where the agency indicated it spoke to Goldberg and that he knew about BEI, did not owe it money, and that he did not work.[3]  There was also an entry on August 19, 2020, indicating Goldberg informed the agency that insurance should cover "it" and that he no longer has "it", referencing the trailer.

{¶ 12} In March 2021, BEI contacted law enforcement to press charges against Goldberg.  In May 2021, prior to Goldberg's indictment in this case, BEI submitted a claim to Goldberg's insurance provider.  The claim was ultimately denied due to Goldberg's "material misrepresentations made during the investigation."  According to Goldberg's insurance provider, Goldberg's conduct prejudiced the insurance provider's ability to investigate.

{¶ 13} In his defense, Goldberg testified regarding his version of the events.  According to Goldberg, he last saw the trailer on March 7, 2019, when it was parked at his facility on Butler Warren Road.[4]  On March 6, 2019, Goldberg accepted a job from a logistics company which included picking up product from General Electric in West Chester and transporting the product to a power plant in Illinois.  According to Goldberg his truck was inoperable when he was due to pick up the product, so he picked up the product with a

---

2. Goldberg's counsel objected to the admission of Exhibit 10, arguing that the document was not prepared by BEI and as to the authenticity of the records.  The trial court overruled counsel's objection on the basis of the business records exception.  While the establishment of authenticity has a low threshold, any error in admitting the records will be discussed herein as harmless.  *State v. Glenn*, 12th Dist. Butler No. CA2009-01-008, 2009-Ohio-6549, ¶ 18.

3. In a separate entry, also on June 15, 2020, it suggests Goldberg indicated he did not know BEI.  However, Goldberg specifically denied saying he did not know BEI when he testified.

4. Although Goldberg initially testified that he last saw the trailer on March 7, 2019, the remainder of his testimony suggests the last time he saw the trailer was a few days later, on March 10, 2019.

borrowed truck on March 8, 2019, and brought the loaded trailer to his facility on Butler Warren Road. According to Goldberg, two days later, a logistics company arranged for a different carrier company, RJ Express, to pick up the loaded trailer from Goldberg and deliver it to the power plant in Illinois. The delivery was due to take place on March 11, 2019, at 6 a.m.

{¶ 14} On March 10, 2019, Goldberg claimed a driver from RJ Express picked up the loaded trailer from Goldberg's facility. Goldberg testified he believed the driver would deliver the product and return the trailer to his facility. Goldberg said he realized a few days later the trailer was not going to be returned and that the logistics company informed him the driver left the trailer in Illinois. At that time, Goldberg spent "another couple weeks" working on his truck. After his truck was repaired, he purports to have called a friend that lives near the power plant in Illinois to check on the trailer. Goldberg said his friend could not locate the trailer. Goldberg further said it was at this time he believed it was "missing."

{¶ 15} Goldberg testified he attempted to obtain information from the power plant in Illinois regarding the trailer, but they were "not very forthcoming." Goldberg assumed BEI would eventually be contacted, as he thought anyone who used the trailer would learn that it was registered to BEI. Thus, Goldberg testified he assumed that BEI would be made aware of who had the trailer. Goldberg indicated that there was no reason for him to contact BEI or to let it know what happened to its trailer. Although, on cross-examination, Goldberg conceded he "should have probably made a phone call."

{¶ 16} The next time Goldberg heard anything about the trailer was in May 2021, after he was indicted in this case, and he was contacted by his insurance provider. According to Goldberg, he informed his insurance provider of the story detailed above, and that he could not say whether the trailer was stolen. Goldberg explained that he was not trying to avoid BEI and had not been contacted by BEI except for "the very beginning of this

* * * maybe just because [he] needed to get caught up on payments[.]" In an attempt to refute the testimony presented by the state, Goldberg claimed that as soon as he learned BEI did not have possession of the trailer, he was always cooperative.

{¶ 17} Goldberg offered conflicting testimony regarding his residency at the time he rented the trailer from BEI. Initially, Goldberg indicated he was living in Monroe at the time the rental agreement began, but later indicated he was living in West Chester. The following month, December 2017, Goldberg moved into a fifth wheel trailer that he kept at his shop, i.e., 7464 Butler Warren Road, Mason, Ohio, 45040. Goldberg continued to reside and work at his shop until May 2020, at which point he just "went out on the road," and did not have a permanent address. Goldberg denied anyone from BEI came to his shop while he was living at that address.

{¶ 18} He also indicated he had issues with missed payments between 2017 and December of 2018, as his industry is "constantly bombarded by credit card fraud." Throughout his business relationship with BEI, Goldberg estimated his credit card had been compromised five or six times, but he always "made it right" when he was contacted by BEI. On cross-examination, Goldberg acknowledged he had been contacted by BEI prior to December 2018 when BEI was "trying to get payments made," but claimed he never received a call or message from BEI after December 2018. Goldberg testified he was "probably" aware that the matter had been turned over to collections and he recalled a collection company calling him. According to Goldberg, he told the company he did not know where the trailer was and that he believed insurance would take care of the situation. Goldberg could not recall what he said about BEI, but denied stating he did not know who BEI was.

{¶ 19} At the end of his testimony, Goldberg reiterated that he did not have the trailer, did not know who had the trailer, did not sell the trailer, and had not seen the trailer since

March 2019. Goldberg indicated he did not intend to deprive BEI of the trailer.

{¶ 20} At the close of the state's evidence, Goldberg moved for an acquittal pursuant to Crim.R. 29. Goldberg argued that the state failed to prove he had the requisite intent to commit theft of the rental property as there was no evidence that a notice of intent to repossess ever reached Goldberg. The trial court denied Goldberg's motion.

{¶ 21} The trial court rendered guilty verdicts on both counts of the indictment. In its entry, the trial court noted that the credibility of the witnesses was the determining factor in deciding the case. After a hearing, the trial court sentenced Goldberg to three years of community control, as well as up to two years of discretionary postrelease control. The trial court also ordered Goldberg to pay $25,000 in restitution to BEI in addition to court costs.

{¶ 22} Goldberg now appeals, raising four assignments of error for our review.

{¶ 23} Assignment of Error No. 1:

{¶ 24} THE STATE FAILED TO PROVIDE LEGALLY SUFFICIENT EVIDENCE TO SHOW THAT GOLDBERG INTENDED TO DEPRIVE BEI OF THE TRAILER OR UNPAID RENTAL FEES.

{¶ 25} Assignment of Error No. 2:

{¶ 26} THE TRIAL COURT'S FINDING OF GUILTY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE THAT SHOWS THAT GOLDBERG LACKED THE INTENT TO COMMIT A CRIMINAL OFFENSE.

{¶ 27} In his first and second assignments of error, Goldberg argues his conviction is not supported by the manifest weight or sufficiency of the evidence.

{¶ 28} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Bradbury*, 12th Dist. Butler No. CA2015-06-111, 2016-Ohio-5091, ¶ 16. The

"relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 29} A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.* at ¶ 15. A "determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 30} The trial court found Goldberg guilty of two counts of grand theft under R.C. 2913.02(A)(2), which provides: "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [b]eyond the scope of the express or implied consent of the owner or person authorized to give consent."

> To "deprive" one of his or her property means to do any of the following:
>
> (1) Withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with

purpose to restore it only upon payment of a reward or other consideration;

(2) Dispose of property so as to make it unlikely that the owner will recover it;

(3) Accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration.

R.C. 2913.01(C). "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 31} In this case, Goldberg argues the state failed to prove that he maintained the requisite intent to be convicted of grand theft. Specifically, Goldberg claims the testimony presented at trial proved that his actions "were consistent with standard industry practices and the course of conduct between the parties," not that he intended to purposely deprive BEI of the trailer or rental payments.

{¶ 32} Pursuant to R.C. 2913.02(B)(11), intent to commit theft of rented property or rental services shall be determined pursuant to the provisions of section 2913.72 of the Revised Code." That section provides:

(A) Each of the following shall be considered evidence of an intent to commit theft of rented property or rental services:

* * *

(2) After receiving a notice demanding the return of rented property as provided in division (B) of this section, the rentee neither returned the rented property nor made arrangements

acceptable with the renter to return the property.

(B)  To establish that a rentee has an intent to commit theft of rented property or rental services under division (A)(2) of this section, a renter may issue a notice to a rentee demanding the return of rented property.  The renter shall mail the notice by certified mail, return receipt requested, to the rentee at the address the rentee gave when the rental contract was executed, or to the rentee at the last address the rentee or the rentee's agent furnished in writing to the renter.

R.C. 2913.72.

**{¶ 33}** While the failure to comply with R.C. 2913.72(B) prevents reliance upon R.C. 2913.72(A)(2) to establish a defendant's intent to commit theft of the rental property, R.C. 2913.72(C) provides that R.C. 2913.72(A) is not the exclusive means of establishing such intent.  *See Pierson v. Aaron's Rental*, 10th Dist. Franklin No. 10AP-245, 2010-Ohio-5443, ¶ 35.  Rather, R.C. 2913.72(C) provides that "[a] demand for the return of rented property is not a prerequisite for the prosecution of a rentee for theft of rented property[.]  *The evidence specified in division (A) of this section does not constitute the only evidence that may be considered as evidence of intent to commit theft of rented property*."  (Emphasis added.)

**{¶ 34}** After our review of the record, we find the state presented sufficient credible evidence that Goldberg knowingly exerted control over the trailer beyond the scope of BEI's consent, and that he did so with purpose to deprive BEI of the trailer and rental payments. The record reflects that initially, Goldberg obtained control over the trailer by lawful means by paying $311.25, plus tax, every two weeks to use the trailer.  In December 2018, Goldberg's card on file began declining.  Goldberg's agreement with BEI indicated that he would return the trailer to BEI no later than seven days after his final rental period expired. Despite his failure to make any additional rental payments, Goldberg did not return the trailer.  Instead, he continued to use the trailer for his business until at least March 2019,

when he allowed a third party to use the trailer to transfer product to a power plant in Illinois. Goldberg testified that he was aware at "the very beginning of this" that he "needed to get caught up on payments[.]" Notwithstanding his lack of payment, Goldberg knowingly retained the trailer for several months past the designated return date, thereby exceeding the consent of BEI. *See State v. Asberry*, 10th Dist. Franklin No. 04AP-1113, 2005-Ohio-4547, ¶ 10 ("knowledge may be imputed to appellant that he was in possession of a vehicle, which he had no right to possess").

{¶ 35} When considering Goldberg's argument that his behavior was standard industry practice and not evidence that he intended to purposely deprive BEI of the trailer or rental payments, we find such argument unconvincing in light of the evidence. "Because, aside from an admission of guilt, no direct evidence of a defendant's purpose can exist, the state must rely upon inferences from the 'surrounding facts and circumstances' to prove purpose." *State v. Jackson*, 12th Dist. Butler No. CA2013-10-192, 2014-Ohio-3779, ¶ 19, quoting *State v. Sidders*, 3d Dist. Union No. 14-08-24, 2009-Ohio-409, ¶ 26. An individual's purpose or intent may, therefore, be established by circumstantial evidence. *State v. Widmer*, 12th Dist. Warren No. CA2011-03-027, 2012-Ohio-4342, ¶ 99, citing *State v. McGraw*, 12th Dist. Fayette No. CA2009-10-020, 2010-Ohio-3949, ¶ 12.

{¶ 36} In this case, the state presented sufficient circumstantial evidence that Goldberg purposely deprived BEI of its property and rental payments. BEI employees testified that despite numerous attempts, BEI was unable to reach Goldberg to discuss the trailer or unpaid rental payments, a problem not experienced with Goldberg in the past. Notably, between November 2017 and December 2018, BEI resolved payment conflicts with Goldberg using the information provided by Goldberg on the credit authorization form. As discussed above, Goldberg was aware "early on" that his payments were overdue. He later spoke with a collection agency about the trailer, which echoed that the payments

remained unpaid. Notwithstanding his knowledge of the unpaid payments, Goldberg did not inform BEI that the trailer was missing, that he had allowed someone else to take it, or that it was never returned.

{¶ 37} Moreover, despite Goldberg's allegation that he was cooperative in the investigation of the missing trailer, the record indicates Goldberg purposely impeded BEI's ability to recover the trailer. This is not only evidenced by Goldberg's interference with his insurance provider's investigation into the matter, but can also be inferred from his refusal to communicate with BEI regarding the trailer or its location after learning it was missing.

{¶ 38} By the time Goldberg learned the trailer was missing, BEI had filed a police report and was continuously attempting to contact Goldberg. Goldberg's testimony gave no credible explanation as to why he did not respond to BEI's telephone calls, in-person visits, or Facebook audio call. Despite his general denials, the history of Goldberg's prior consistent communication with BEI until December 2018 suggests he simply ignored BEI's communications after he defaulted on the rental payments and gave possession of the trailer to unauthorized individual. Such behavior is indicative of Goldberg's intent to deprive BEI of the trailer and rental services. *See State v. Latham*, 2d Dist. Montgomery No. 24636, 2012-Ohio-2106, ¶ 24 (where the appellant's inaction and retention of certain rental property, despite knowing of the store's collection efforts, established the intent element of R.C. 2913.02[A][2]).

{¶ 39} The trial court clearly disbelieved Goldberg's testimony that BEI never contacted him after December 2018. In fact, the trial court stated as much in its written verdict when it noted that this case came down to the credibility of the witnesses. "The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Applegate*, 12th Dist. Warren No. CA2013-08-070, 2014-Ohio-1697, ¶ 20, citing *State v.*

*Rhines*, 2d Dist. Montgomery No. 23486, 2010-Ohio-3117, ¶ 39. Thus, "[a]s the trier of fact is in the best position to judge the credibility of the witnesses, we will not disturb the trial court's finding in regard to which version of events was credible, and which was not." *State v. Bonner*, 12th Dist. Butler No. CA2012-09-195, 2013-Ohio-3670, ¶ 13.

{¶ 40} Although Goldberg claims BEI would have been contacted and recovered the trailer if it was towed, an industry practice that BEI concedes, the fact that BEI was never contacted regarding the trailer demonstrates it was not left in a location that BEI was likely to recover it. This is especially true considering the length of time the trailer had been missing at the time of trial. While there may be several conclusions that may be inferred from the circumstantial evidence, it is the factfinder's prerogative which to choose. *State v. Cotton*, 12th Dist. Butler No. CA2022-05-055, 2023-Ohio-46, ¶ 42. As such, we conclude the record establishes that the trailer was never returned to BEI, there was no intention or effort to return the trailer, or make its location known, and thus, Goldberg purposely deprived BEI of its property and rental payments. *See In re Moff*, 11th Dist. Portage Nos. 2007-P-0053 thru 2007-P-0055, 2008-Ohio-1656, ¶ 32 ("intent to deprive" element met where an ATV was not returned to the owner, there was no evidence of any intention or effort to return the ATV, and the ATV was left in a location where it was unlikely the owner could recover it).

{¶ 41} Lastly, Goldberg argues under his first assignment of error that the evidence is insufficient to support his conviction for theft as to the rental fees because the trial court improperly admitted hearsay evidence. Namely, Goldberg claims the trial court erred in admitting state's Exhibit 10, i.e., the collection agency's notes regarding Goldberg's account, because it was inadmissible hearsay. However, even if the trial court erred in admitting the agency's notes, "[a]ny error, defect, irregularity, or variance which does not affect substantial rights" is harmless error and "shall be disregarded." Crim.R. 52(A). The

"accused has a constitutional guarantee to a trial free from prejudicial error, not necessarily one free from all error." *State v. Brown*, 65 Ohio St.3d 483, 484 (1992). "Where constitutional error in the admission of evidence is extant, such error is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt." *State v. Wells*, 12th Dist. Butler No. CA96-09-185, 1997 Ohio App. LEXIS 3348, *3-4 (July 28, 1997), citing *State v. Tabasko*, 22 Ohio St.2d 36, syllabus (1970).

{¶ 42} After our review, we find that in light of the evidence presented, any prejudice that may have resulted from the admission of the agency's notes constitutes harmless error. The introduction of the notes did not change the outcome of the trial or result in a miscarriage of justice. In fact, Goldberg concedes in his brief that "the exhibit and testimony do nothing but corroborate Goldberg's testimony," during which he summarized his interaction with and his statements to the agency. Even without the admission of the agency's notes, the testimony of BEI's employees, coupled with Goldberg's own testimony, established beyond a reasonable doubt that he was guilty of grand theft.

{¶ 43} Accordingly, after reviewing the record, weighing inferences, and examining the credibility of the witnesses, we find that Goldberg's conviction for each count of grand theft is not against the manifest weight of the evidence and was supported by sufficient evidence. Goldberg's first and second assignments of error are overruled.

{¶ 44} Assignment of Error No. 3:

{¶ 45} THE TRIAL COURT FAILED TO ADVISE GOLDBERG THAT HE WAS SUBJECT TO PRC AND OF THE PENALTIES HE COULD FACE IF VIOLATED THE CONDITIONS OF PRC.

{¶ 46} In his third assignment of error, Goldberg argues his sentence is contrary to law, and must be set aside, because the trial court failed to provide any advisement of the

consequences of violating the terms of his postrelease control.

{¶ 47} The standard of review set forth in R.C. 2953.08(G)(2) governs all felony sentences. *State v. Simmons*, 12th Dist. Warren No. CA2020-10-069, 2021-Ohio-3563, ¶ 80. Pursuant to that statute, "this court may modify or vacate a felony sentence only if, by clear and convincing evidence, the record does not support the trial court's findings under certain enumerated statutes, none of which are relevant here, or the sentence is otherwise contrary to law." *State v. Richey*, 12th Dist. Clermont Nos. CA2022-08-038 thru CA2022-08-041, 2023-Ohio-336, ¶ 12, citing *State v. Harp*, 12th Dist. Clermont No. CA2015-12-096, 2016-Ohio-4921, ¶ 7.

{¶ 48} According to R.C. 2967.28(C), any prison sentence for a felony of the fourth degree, aside from certain fourth degree felonies inapplicable here, shall include a requirement that the offender be subject to a period of postrelease control of up to two years after the offender's release from imprisonment, if the parole board determines that a period of postrelease control is necessary for that offender. If the trial court determines at the sentencing hearing that a prison term is necessary, the court shall notify the offender that the offender may be supervised under R.C. 2967.28 after the offender leaves prison if the offender is being sentenced for most fourth-degree felonies. R.C. 2929.19(B)(2)(e).

{¶ 49} In this case, the trial court sentenced Goldberg to three years of community control, with a 12-month prison sentence reserved on each count. At the sentencing hearing, the trial court did not discuss postrelease control, although the sentencing entry indicates Goldberg was subject to a discretionary period of postrelease control at the discretion of the parole board. The sentencing entry also provides notice to Goldberg of the penalties he could face if he violates postrelease control. Because the trial court did not pronounce the same notices during the sentencing hearing, Goldberg claims his sentence must be set aside.

{¶ 50} After our review, we conclude Goldberg's argument is premature. If a defendant violates the terms of his or her community control sanctions, a trial court may extend the length of the offender's community control; impose more restrictive sanctions; or impose a prison term. *State v. Heinz*, 146 Ohio St.3d 374, 2016-Ohio-2814, ¶ 15; R.C. 2929.15(B)(1). After finding that a violation of the community control sanctions occurred, the trial court conducts a second sentencing hearing at which the offender is sentenced anew and the trial court must comply with the relevant sentencing statutes. *Id.* "[I]n order to comply with separation-of-powers concerns and to fulfill the requirements of the postrelease-control sentencing statutes, especially R.C. 2929.19(B) and 2967.28, a trial court must provide statutorily compliant notification to a defendant regarding postrelease control at the time of sentencing, including notifying the defendant of the details of the postrelease control and the consequences of violating postrelease control." *State v. Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111, ¶ 18; *State v. Bates* 167 Ohio St.3d 197, 2022-Ohio-475 ¶ 11. However, such notification is only required if the trial court determines at the sentencing hearing that a prison term is necessary or required. R.C. 2929.19(B)(2)(e).

{¶ 51} In this case, the trial court sentenced Goldberg to community control, and determined that a prison term was not necessary or required. If Goldberg violates the terms of his community control, the trial court will then sentence him anew, at which time the court may choose more restrictive community control sanctions or to sentence him up to the reserved prison term on each count. If it determines a prison term is then necessary or required, and elects to sentence Goldberg to a prison term at that time, it would then be required to comply with the notice requirements of R.C. 2929.19(B) and R.C. 2967.28. However, because the trial court did not impose a prison term, and instead sentenced Goldberg to community control, the trial court was not required to provide any notification relating to postrelease control at the sentencing hearing. *See State v. Russell,* 5th Dist.

Richland No. 06 CA12, 2006-Ohio-4450, ¶ 26; *State v. Barton*, 4th Dist. Washington No. 12CA24, 2013-Ohio-307, ¶ 10-12; *State v. Pulley*, 1st Dist. Hamilton No. C-120444, 2013-Ohio-1624, ¶ 6; *see also State v. Schoenstein*, 12th Dist. Butler No. CA2022-04-044, 2022-Ohio-4446, ¶ 16.

{¶ 52} Notwithstanding the above, we conclude the trial court's designation of a discretionary postrelease control period in the sentencing entry was erroneous. Goldberg concedes on appeal that the annotation is "likely a clerical error." Rather than rendering Goldberg's entire sentence void, it is well established that "the imperfect sentencing entry can be corrected through a nunc pro tunc entry." *State v. Williams*, 12th Dist. Butler No. CA2018-03-055, 2018-Ohio-3990, ¶ 18. Therefore, because this error may be corrected through a nunc pro tunc sentencing entry, we set aside the trial court's sentencing entry as it relates to its imposition of postrelease control only and remand this matter to the trial court. Upon remand, the trial court shall issue a nunc pro tunc sentencing entry to properly reflect that Goldberg is not subject to postrelease control.

{¶ 53} Assignment of Error No. 4:

{¶ 54} THE TRIAL COURT FAILED TO ADVISE GOLDBERG OF THE REQUIREMENTS AND POTENTIAL PENALTIES FOR VIOLATING COMMUNITY CONTROL AS REQUIRED BY R.C. 2929.19.

{¶ 55} In his final assignment of error, Goldberg argues the trial court erred in failing to advise him of the potential penalties he could face if he violated community control. Thus, because he was not provided with each of the required notifications set forth in R.C. 2929.19(B)(4), Goldberg claims he is entitled to a resentencing.

{¶ 56} R.C. 2929.19(B)(4) provides that, if the sentencing court imposes a community control sanction, the court "shall notify the offender" that,

> if the conditions of the sanction are violated, if the offender

commits a violation of any law, or if the offender leaves this state without the permission of the court or the offender's probation officer, the court may impose a longer time under the same sanction, may impose a more restrictive sanction, or may impose a prison term on the offender and shall indicate the range from which the prison term may be imposed as a sanction for the violation[.]

In discussing the statute when it was numbered as R.C. 2929.19(B)(5), the Supreme Court of Ohio concluded that "a trial court sentencing an offender to a community control sanction is required to deliver the statutorily detailed notifications at the sentencing hearing." *State v. Brooks*, 103 Ohio St.3d 134, 2004-Ohio-4746, ¶ 15. The court rejected a substantial compliance interpretation view of the statute, and instead emphasized the mandatory nature of the word "shall" in the statute and favored a strict compliance view of R.C. 2929.19(B)(5). *Id.* at ¶ 24. In so doing, the court noted that what the statute requires is clear, and ultimately declined to interpret such a clear statute to mean anything other than what it unmistakably states. *Id.* citing *State v. Comer*, 99 Ohio St.3d 463, 2003-Ohio-4165, ¶ 20 (when the intent of a statute is clear, it must be enforced as written).

**{¶ 57}** In this case, the trial court stated the following at the sentencing hearing: "You were convicted of grand theft, two counts. Twelve months in prison is reserved. Place him on community control. I find he is amenable to community control." The trial court later stated that "there should be and there will be incarceration if you don't follow the rules. And that means if you – they're going to still do random drug and alcohol testing. So you haven't dodged this." The trial court then clarified that the reserved prison term was 12 months on each count, to be served concurrently.

**{¶ 58}** After reviewing the record, it is evident the trial court informed Goldberg that it was reserving 12-month prison terms on each count of the indictment, and that if he failed to "follow the rules," he would be incarcerated. The trial court did not otherwise inform Goldberg of the statutorily required notifications under R.C. 2929.19(B)(4), namely that

violating another law or leaving the state without permission could result in additional sanctions, including the prison terms outlined by the trial court. Under the strict compliance application of R.C. 2929.19(B)(4) implemented by the Ohio Supreme Court, the trial court erred in failing to inform Goldberg that the concurrent 12-month prison terms could be imposed not only in the event of a community control violation, but also if he commits a violation of any law, or if he leaves the state without the permission of the court or his probation officer. *See State v. Colburne*, 9th Dist. Summit No. 27553, 2015-Ohio-4348, ¶ 29; *State v. Jones*, 6th Dist. Lucas No. L-03-1321, 2005-Ohio-5736, ¶ 14. As noted by the Ohio Supreme Court in *Brooks*, the use of the word "shall" in the statute indicates the mandatory nature of the notifications contained in R.C. 2929.19(B)(4). *Brooks* at ¶ 24.

{¶ 59} Accordingly, finding merit to Goldberg's argument, we sustain his fourth assignment of error. Because Goldberg has not yet violated community control, we conclude it is appropriate to remand the matter for resentencing to include the required notifications. *Colburne* at ¶ 29; *Jones* at ¶ 15. As such, the judgment of the Warren County Court of Common Pleas is affirmed in part, reversed in part, and remanded for further notifications to Goldberg as outlined herein.

{¶ 60} Judgment affirmed in part, reversed in part, and remanded

S. POWELL, P.J., and BYRNE, J., concur.